**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1330-15T2

JAIME MORA,

    Plaintiff-Respondent,

v.

DEBORA MORA,

    Defendant-Appellant.

_____

          Submitted February 27, 2017 — Decided  March 16, 2017

          Before Judges Nugent and Currier.

          On appeal from Superior Court of New Jersey,
          Chancery Division, Family Part, Bergen County,
          Docket No. FM-02-000252-15.

          Gilberto M. Garcia, attorney for appellant.

          Respondent has not filed a brief.

PER CURIAM

    Defendant Debora Mora appeals from an October 21, 2015 trial court order denying her motion to set aside a June 10, 2015 final judgment of divorce ("FJOD").  The court entered the FJOD after defendant defaulted.  For the reasons that follow, we affirm.

We derive the following facts from the sparse appellate record. Plaintiff and defendant were married twice. The parties divorced in 1979, remarried in 1988, and separated in 2010. In 2014, plaintiff filed a divorce complaint. Defendant failed to answer the complaint.

Plaintiff filed a Notice of Proposed Final Judgment on May 13, 2015. Plaintiff directed the notice to defendant. The notice included an itemization of the parties' assets, which included real property in Englewood and Union City, a business, three vehicles, a bank account, and personal property. The notice also specified June 10, 2015, as the proposed trial date.

On June 10, 2015, the trial court conducted a hearing and entered a FJOD at its conclusion. Defendant was present at the hearing. The FJOD ordered the parties to list the Englewood and Union City properties for sale by specified dates and divide the net proceeds equally. The FJOD addressed who would remain at the residential property pending its sale, who would collect the rents from the rental properties, and how the properties' carrying costs would be allocated. The FJOD provided terms on which the parties' jointly owned business was to be sold and the salaries to be paid pending the sale. The FJOD granted possession and title of the 2003 Cadillac Escalade to defendant, and possession and title of

the 2007 Chevrolet Avalanche to plaintiff. It ordered the parties to transfer title to the 2005 Acura 3.2 TL to their son.

Plaintiff was to retain possession of his personal Wells Fargo bank account, containing approximately $2500. The Wells Fargo safe deposit box was to be relinquished to the bank and its contents divided as appropriate. Lastly, the FJOD provided for the equitable distribution of the parties' personal property and bank account.

On September 4, 2015, nearly three months after the trial and entry of the FJOD, defendant moved to vacate the FJOD. On October 21, 2015, the trial court held a hearing on defendant's motion.

Defendant has not included in the appellate record the certification she presumably filed in support of her motion to vacate the default judgment. We glean from the parties' and court's comments during oral argument that defendant claimed plaintiff's attorney had a conflict of interest and should have told her to seek other counsel; she had not been served with the divorce complaint; and was unaware of the pending divorce.[1]

When oral argument commenced, the court asked defense counsel whether he had obtained transcripts of "the two proceedings which occurred on June 10th of this year." Counsel had not. The court

---

[1] The appellate record does not include a copy of the June 10, 2015 proceedings.

explained that plaintiff's attorney had filed a responding certification which demonstrated no conflict of interest existed. In addition, though defendant certified she had not been served with a divorce complaint, the affidavit of service established the complaint had been served on her twenty-three-year-old son, a fact plaintiff verified.

The judge also recounted that during the June proceedings he noted defendant received notices in January, March, and May 2015, and "[w]hen [he] went through that, [he] made sure that the notices were sent to [defendant] in both English and Spanish." Further, defendant asked plaintiff for an attorney in July 2014, "which leads one to the conclusion . . . she knew about the divorce proceedings from the inception[.]" The court noted on the record during the June 10 proceedings "there were ample proofs [defendant] was properly served with the request for divorce and she was properly served with a notice of proposed final judgment in accordance with our [c]ourt rules."

In response to defendant's arguments that the proceedings were difficult to understand and she was not given an opportunity to speak, the judge noted the court utilized an interpreter, defendant answered the judge several times when addressed directly, and defendant did not ask any questions despite the

clarification of her right to do so.  Instead, defendant complained about her "pittance salary" and lack of alimony.

Turning to defendant's arguments in support of her motion to vacate the default judgment, the court noted it had "addressed the issues of alimony and equitable distribution extensively on the record during [the June 10] hearings."  The court explained plaintiff did not provide for alimony in his proposed final judgment because the parties "would continue to take the same amount out of [their business]" and defendant would collect the rental income from their rental properties.  That arrangement provided defendant with "a more comfortable lifestyle than . . . plaintiff, who is only receiving a salary and has no rental income."

Defendant alleged a potential Sheridan[2] issue, as she believed plaintiff signed defendant's name on their joint tax returns.  The judge evaluated and dismissed this contention as a non-issue.

The judge analyzed defendant's motion to vacate the default judgment under Rule 4:50-1.  He noted:

> [while] mindful that our [a]ppellate courts
> have told us . . . we must exercise great
> liberality and should tolerate every
> reasonable ground for . . . indulgence . . .
> with a view to opening default judgments in
> order that a just result is reached[,]

---

[2]  Sheridan v. Sheridan, 247 N.J. Super. 552 (App. Div. 1990).

. . . .

> [g]enerally, a defendant seeking to reopen a default judgment because of excusable neglect must show that the failure to answer was excusable under the circumstances and that a meritorious defense is available.

The court ultimately determined "there was no showing of excusable neglect in failing to answer the complaint or otherwise" failing to participate in the litigation, and affirmed the FJOD in an October 21, 2015 order.

Defendant appeals. In arguments devoid of any significant discussion of the standard of review for vacating a default judgment, defendant contends the equitable distribution was unfair, she should have the opportunity to be heard as to alimony, and the trial court's consideration of her Sheridan argument was inadequate. As to the business, the FJOD ordered it be sold four years after entry of the FJOD, the net proceeds to be divided equally. Defendant asserts she should not be "precluded from obtaining her 50% in the business and her commercial property for a four-year period[.]"

The trial court decided defendant's motion under Rule 4:50-1, which provides:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or

excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

When a trial court considers a motion to vacate a default judgment, the motion must be "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div.) (citation omitted), aff'd, 43 N.J. 508 (1964). This is especially so in family actions, because "a judgment by default is not favored in divorce suits." Curry v. Curry, 108 N.J. Super. 527, 530 (App. Div. 1970) (citation omitted).

Nonetheless, a trial court's decision under Rule 4:50-1 is entitled to "substantial deference, and should not be reversed unless it results in a clear abuse of discretion." US Bank N.A. v. Guillaume, 209 N.J. 449, 467 (2012) (citation omitted). As to the first section of Rule 4:50-1, a motion to vacate a judgment

under Rule 4:50-1(a) "should be granted sparingly, and is addressed to the sound discretion of the trial court, whose determination will be left undisturbed unless it results from a clear abuse of discretion." Fineberg v. Fineberg, 309 N.J. Super. 205, 215 (App. Div. 1998) (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283-84 (1994)). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (citation omitted).

Here, the trial court's denial of defendant's motion to set aside the default judgment did not constitute an abuse of discretion. Although difficult to discern on this sparse record, it appears defendant moved for relief under Rule 4:50-1(a). The grounds defendant asserted to support her motion were unsupported by, and in some instances contrary to, the facts. Additionally, the court gave defendant the opportunity to participate in the proof hearing by questioning plaintiff, but defendant declined the opportunity to do so. Lastly, assuming defendant sought relief under Rule 4:50-1(f), defendant has not demonstrated the trial court's decision was inherently unfair or contrary to applicable legal principles, nor has defendant established "any other reason justifying relief from the operation of the judgment." Ibid.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION