NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-2649-13T4

U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR THE STRUCTURED
ASSET SECURITIES CORPORATION
MORTGAGE PASS-THROUGH CERTIFICATES,
2006-EQ1,

    Plaintiff-Respondent,

v.

JOANN L. CURCIO,

    Defendant-Appellant,

and

MR. CURCIO, husband of
Joann L. Curcio,

    Defendant.

> **APPROVED FOR PUBLICATION**
>
> **February 1, 2016**
>
> **APPELLATE DIVISION**

_____

Submitted September 16, 2015 — Decided February 1, 2016

Before Judges Reisner, Hoffman and Leone.

On appeal from the Superior Court of New Jersey, Chancery Division, Warren County, Docket No. F-008037-12.

Joseph A. Chang & Associates, LLC, attorneys for appellant (Joseph A. Chang, of counsel and on the briefs; Jeffrey Zajac, on the briefs).

Reed Smith, LLP, attorney for respondent (Henry F. Reichner, of counsel; Alex G. Gross, on the brief).

The opinion of the court was delivered by

LEONE, J.A.D.

Defendant Joann L. Curcio appeals from a final judgment of foreclosure and an order denying her motion to vacate the judgment. In considering her appeal, we review differences between the various Court Rules governing personal and mailed service of process and proof of service. Based on our construction of the current versions of those Rules, we find no merit in defendant's argument that service was improper, or in any of her other contentions. Accordingly, we affirm.

I.

Defendant executed a promissory note in favor of EquiFirst Corporation in the amount of $240,500 in 2006. Defendant simultaneously executed a non-purchase money mortgage in favor of EquiFirst. The mortgage encumbered a single-family residence located in Bloomsbury, Greenwich Township, in Warren County, where it was recorded. The mortgage named Mortgage Electronic Registration Systems, Inc. (MERS) as mortgagee in a nominee capacity for EquiFirst.

In September 2010, defendant defaulted on the promissory note. In January 2011, MERS assigned the mortgage to plaintiff U.S. Bank National Association.

On September 29, 2011, counsel for plaintiff sent defendant a "Notice of Intention to Foreclose," addressed to the encumbered property via regular mail and certified mail, return receipt requested. On October 3, 2011, counsel for plaintiff received the certified mail return receipt, which was apparently signed by defendant. In April 2012, defendant requested and received a reinstatement quote from plaintiff's counsel.

On May 2, 2012, plaintiff instituted a foreclosure action in the Chancery Division. In May 2012, a private process server attempted at least three times to make personal service of the complaint and summons on defendant at the encumbered property, without success.

As a result, plaintiff's counsel employed a private investigator to locate defendant. As detailed in the subsequently-filed Certification of Inquiry/Mailing, an inquiry was made with the United States Postal Service (USPS) asking if defendant still lived at the encumbered property. The postmaster advised no change of address order was on file. The investigator performed a "skip trace," which revealed that defendant still resided at the encumbered property.[1] Inquiries

---

[1] Black's Law Dictionary defines a "skiptracing agency" as a "service that locates persons (such as delinquent debtors, missing heirs, witnesses, stockholders, bondholders, etc.) or

(continued)

to the Department of Motor Vehicles (DMV) and the Warren County Tax Assessor's Office confirmed the same address.

Moreover, the private investigator prepared a report, which detailed the investigator's efforts to locate defendant. The investigator checked with defendant's creditors, the telephone company's directory assistance database, the National Address Database, and defendant's neighbors. Every inquiry indicated that defendant still resided at the encumbered property.

As a result of the difficulties in effecting personal service of the complaint and summons on defendant, on July 26, 2012, plaintiff mailed defendant the complaint and summons to the encumbered property by regular mail and certified mail, return receipt requested. The certified mail was returned marked "unclaimed," and the regular mail was not returned.

Plaintiff set forth its unsuccessful efforts at effecting personal service, its subsequent inquiries, and its successful service by mail, in its Certification of Inquiry/Mailing, which was filed on November 27, 2012. The Certification of Inquiry/Mailing attached: the process server's affidavit of unsuccessful personal service; the postmaster's finding of no change of address; the results of the inquiries to the DMV and

---

(continued)
missing assets (such as bank accounts)." Black's Law Dictionary, 1514 (9th ed. 2009).

Tax Assessor's Office showing defendant still lived at the encumbered property; the private investigator's report; and the USPS "Track & Confirm" printout showing that the certified mail was "[u]nclaimed."

On November 30, 2012, plaintiff filed a certification of default, citing defendant's failure to file an answer to the complaint. Default was entered the same day. In February 2013, defendant's counsel contacted plaintiff's counsel and requested that the default be vacated. Plaintiff denied this request. Defendant failed to file a motion to vacate the default.

On April 22, 2013, plaintiff sent defendant a Notice of Entry of Default by certified and regular mail to the encumbered property. Plaintiff also sent a formal notice, as required by N.J.S.A. 2A:50-58, advising defendant of her right to cure and of plaintiff's intention to seek a final judgment. Defendant failed to cure her default.

Plaintiff first moved for entry of final judgment in May 2013. On June 12, 2013, defendant filed opposition to plaintiff's motion, arguing that plaintiff miscalculated the interest on the loan and that she did not receive a Notice of Intention to Foreclose that complied with the Fair Foreclosure Act, N.J.S.A. 2A:50-53 to -68. Notably, defendant's opposition

did not raise insufficiency of service. Defendant represents that plaintiff's motion was denied.

On September 27, 2013, plaintiff filed a second motion for entry of final judgment. Defendant did not oppose this motion. On October 11, 2013, the Chancery Division entered a final judgment of foreclosure in favor of plaintiff in the amount of $292,780.85, awarded counsel fees of $3,077.81, and ordered a sheriff's sale of the property.

On November 21, 2013, defendant moved to vacate the entry of final judgment under Rule 4:50-1. By order dated January 21, 2014, the trial court denied defendant's motion to vacate the final judgment, and found that plaintiff's three unsuccessful attempts to effect personal service justified service by mail pursuant to Rule 4:4-5(a).

## II.

Defendant moved to vacate the entry of final judgment of foreclosure under Rule 4:50-1(a) and (d). Rule 4:50-1 provides, in pertinent part, that "[o]n motion, with briefs and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; . . . [or] (d) the judgment or order is void."

"The decision whether to grant such a motion is left to the sound discretion of the trial court[.]" Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993). "The trial court's determination . . . warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). We must hew to that standard of review.

## III.

Defendant first argues the final judgment of foreclosure was void under Rule 4:50-1(d), because service of the summons and complaint was insufficient. However, defendant was indisputably aware of plaintiff's complaint in February 2013, when her attorney contacted plaintiff and requested vacation of the default. Nonetheless, she failed to challenge the sufficiency of service in her June 12, 2013 opposition to the entry of a final judgment. Indeed, defendant did not raise any argument relating to the sufficiency of service until her November 20, 2013 motion to vacate final judgment, nearly sixteen months after the foreclosure complaint was served by mail. Because of defendant's delay in raising this claim despite having notice of the complaint, she "was not equitably entitled to vacate the judgment." See Deutsche Bank Tr. Co. Am.

v. Angeles, 428 N.J. Super. 315, 320 (App. Div. 2012) (holding the defendant's delay in raising the issue of plaintiff's standing until a last-ditch Rule 4:50-1(d) motion barred relief).  In any event, plaintiff's service by mail complied with New Jersey's Court Rules.

A.

"The primary method of obtaining in personam jurisdiction over a defendant in this State is by causing the summons and complaint to be personally served within this State pursuant to R. 4:4-3[.]"  R. 4:4-4(a).  However, "in personam jurisdiction may be obtained by mail under the circumstances and in the manner provided by R. 4:4-3."  R. 4:4-4(a).

Rule 4:4-3(a) provides, in pertinent part:

> If personal service cannot be effected after a reasonable and good faith attempt, which shall be described with specificity in the proof of service required by R. 4:4-7, service may be made by mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, to the usual place of abode of the defendant . . . . The party making service may, at the party's option, make service simultaneously by registered or certified mail and ordinary mail, and if the addressee refuses to claim or accept delivery of registered mail and if the ordinary mailing is not returned, the simultaneous mailing shall constitute effective service. . . . Return of service shall be made as provided by R. 4:4-7.

Rule 4:4-7 provides, in pertinent part:

> If service is made by mail, the party making service shall make proof thereof by affidavit which shall also include the facts of the failure to effect personal service and the facts of the affiant's diligent inquiry to determine defendant's place of abode, business or employment. With the proof shall be filed the affidavit or affidavits of inquiry, if any, required by R. 4:4-4 and R. 4:4-5.

Here, plaintiff filed a Certification of Inquiry/Mailing. See R. 1:4-4(b) (allowing certifications instead of affidavits). That certificate complied with all of the requirements set forth in Rule 4:4-7.

Of course, "[s]ervice by mail is not effective" under Rule 4:4-3 "unless plaintiff first made 'a reasonable and good faith attempt' to serve defendant personally." City of Passaic v. Shennett, 390 N.J. Super. 475, 483 (App. Div. 2007) (quoting R. 4:4-3(a)). Here, plaintiff employed a private process server who certified he/she unsuccessfully attempted, on at least three separate occasions, to serve defendant with plaintiff's complaint and summons in accordance with Rule 4:4-3.

Further, as "described with specificity in" the Certification of Inquiry/Mailing, plaintiff made a "diligent inquiry to determine defendant's place of abode" before making mail service. R. 4:4-7. Plaintiff employed a private investigator who relied on numerous sources, including the postmaster, the DMV, telephone records, tax records, creditors,

and a neighbor to determine defendant's correct address. Every source indicated defendant continued to reside at the encumbered property. Given plaintiff's repeated efforts at making personal service and its subsequent diligent inquiries to confirm defendant's address, service by mail was appropriate.

"Where service is made by registered or certified mail and simultaneously by regular mail," the plaintiff must file "the printout of the electronic confirmation of delivery," "provided by the U.S. Postal Service," or proof that the registered or certified mail was "unclaimed." R. 4:4-7. Here, plaintiff included with its Certification of Inquiry/Mailing a copy of the printout from the USPS website indicating the certified mail went unclaimed. Ibid. This was sufficient proof.

Defendant contends that plaintiff was required to obtain a court order before resorting to mail service under Rule 4:4-3(a)(1). However, Rule 4:4-4 provides that "[i]f service can be made by any of the modes provided by this rule, no court order shall be necessary." R. 4:4-4(b)(3). Rule 4:4-4(a) permits mail service pursuant to Rule 4:4-3. Rule 4:4-3(a) only requires "a reasonable and good faith attempt" to effect personal service before resorting to service by mail.

Defendant argues that plaintiff should have filed its Certification of Inquiry/Mailing prior to resorting to mail

service. However, the affidavit or certification must be filed _after_ the mailing, because it must memorialize not only the diligent inquiry but also "proof of service," including "the return receipt card, or the printout of the electronic confirmation," stating whether the certified mail was delivered or unclaimed. R. 4:4-7.

Rule 4:4-7 provides that "[p]roof of service shall be promptly filed with the court within the time during which the person served must respond thereto[.]" Thus, plaintiff should have filed the Certification of Inquiry/Mailing "within 35 days after service of the summons and complaint on that defendant." R. 4:6-1(a).

Instead, plaintiff filed the Certification of Inquiry/Mailing four months after effecting service by mail. However, defendant did not challenge the untimely filing of the certificate in the Chancery Division. Defendant fails to show plain error. R. 2:10-2. "Failure to make proof of service does not affect the validity of service." R. 4:4-7. Moreover, plaintiff filed the Certification of Inquiry/Mailing before entry of default, and five months before moving for entry of default judgment. Thus, defendant had the certification available to her when opposing entry of default judgment. She has failed to show that the erroneous delay in filing the

certification was "clearly capable of producing an unjust result." R. 2:10-2.

Defendant next argues that the Certification of Inquiry/Mailing was insufficient because plaintiff failed to conduct various other searches, including a title search through surrogate courts, a vital statistics search, a grantor-grantee search, or a search of the New Jersey Department of Banking and Insurance records. However, our Court Rules do not require specific searches, but only require a "diligent inquiry" before resorting to service by mail. R. 4:4-7. As set forth above, plaintiff performed a diligent inquiry. Moreover, defendant does not argue that such searches would have led to plaintiff discovering a different address for defendant. Cf. M & D Assocs. v. Mandara, 366 N.J. Super. 341, 354 (App. Div.) (finding an inquiry insufficient where search of motor vehicle and voting records would have disclosed an address for service), certif. denied, 180 N.J. 151 (2004). Instead, defendant's certification admits that she has resided at the encumbered property for thirty-five years. Thus, we find no merit in defendant's argument.

B.

Defendant contends service by mail had to be performed under Rule 4:4-4(b)(1). Rule 4:4-4(b)(1) provides for service

"[b]y mail or personal service outside the state." "Paragraph (b)(1) is the long-arm provision, prescribing the modes of service by which personal jurisdiction may be obtained over a person not present in New Jersey," including by "mailed service." Pressler & Verniero, Current N.J. Court Rules, comment 3 on R. 4:4-4 (2016). Specifically, Rule 4:4-4(b)(1)(C) allows out-of-state service by mail "[i]f it appears by affidavit satisfying the requirements of R. 4:4-5(b) that despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule[.]" Because plaintiff served defendant within New Jersey, service by mail was governed by Rule 4:4-3(a) rather than Rule 4:4-4(b)(1)(c).

Defendant also argues that plaintiff's service by mail never became effective pursuant to Rule 4:4-4(c) because defendant did not answer the complaint or otherwise appear within sixty days. Rule 4:4-4(c) permits "[o]ptional mailed service" without having to attempt personal service, "provided, however, that such service shall be effective for obtaining in personam jurisdiction only if the defendant answers the complaint or otherwise appears in response thereto, and provided further that default shall not be entered against a defendant who fails to answer or appear in response thereto." However, "[t]his prohibition against entry of default shall not apply to

mailed service authorized by any other provision of these rules." Ibid.

Here, "plaintiff did not serve defendant pursuant to [Rule 4:4-4(c)]." Citibank, N.A. v. Russo, 334 N.J. Super. 346, 351 (App. Div. 2000). Rather, plaintiff successfully made service by mail pursuant to Rule 4:4-3(a) after attempting personal service. Service by mail under Rule 4:4-3(a) "is valid even if the defendant does not answer or appear," Russo, supra, 334 N.J. Super. at 352, and "is as fully effective as personal service. Thus, entry of default is permitted provided only that the conditions of the rule are complied with." Pressler & Verniero, Current N.J. Court Rules, comment on R. 4:4-3 (2016).

## C.

The trial court found service proper under Rule 4:4-5(a). Rule 4:4-5(a) is entitled "Methods of Obtaining In Rem Jurisdiction." Rule 4:4-5(a)(2) permits "service by mail as prescribed by R. 4:4-4(b)(1)(C)" in "actions affecting specific property, or any interest therein, or any res within the jurisdiction of the court," if "it shall appear by affidavit of the plaintiff's attorney or other person having knowledge of the facts, that a defendant cannot, after diligent inquiry as required by this rule, be served within the State." R. 4:4-5(a).

We need not address when "service may" be made pursuant to Rule 4:4-5(a) in an action for foreclosure under a mortgage.[2] It is sufficient to note that service under Rule 4:4-5(a) was not necessary here because defendant could be and was "served within the State" by mail service under Rule 4:4-3(a). R. 4:4-5(a). Where, as here, the sole owner of a property was not an absent defendant and could be served within the State by mail as authorized under Rule 4:4-3(a), there was no need to resort to Rule 4:4-5(a)'s "provision for personal service outside this State," "service by mail [outside the State] as prescribed by R. 4:4-4(b)(1)(A)," or service "by publication." R. 4:4-5(a)(1), (2), (3). See M & D Assocs., supra, 366 N.J. Super. at 353 (service by publication under Rule 4:4-5 "is an alternative method of service" that is only available when "the defendant is not available for service within the State"); see also Montville v. Block 69, Lot 10, 74 N.J. 1, 20 n.9 (1977) (service by regular mail and certified mail, return receipt requested, "to notify a landowner of the foreclosure proceeding," adequately

---

[2] See De Sena v. Prudential Ins. Co., 117 N.J. Super. 235, 243 (App. Div. 1971) ("If the judgment sought will affect the interests of particular persons in designated property, the action is quasi in rem," and service may be effected under Rule 4:4-5); see also Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 114 n.5 (2006) ("foreclosure is a quasi in rem action").

"comports with various Court Rules which concurrently deal with notice requirements," including Rule 4:4-5).

Because defendant was properly served under Rule 4:4-3(a), an affidavit of inquiry, "if any, [was not] required by R. 4:4-4 and R. 4:4-5." R. 4:4-7. Thus, we need not determine whether the Certification of Inquiry/Mailing met the requirements for affidavits under those rules imposed by Rule 4:4-5(c).

D.

Defendant argues that the Chancery Division should have held a plenary hearing to determine whether she was properly served. We set aside a trial judge's decision to deny a plenary hearing only if the judge abused his or her discretion. Colca v. Anson, 413 N.J. Super. 405, 421-22 (App. Div. 2010). Here, defendant never asked the Chancery Division to hold a plenary hearing, and she raised no material issues of disputed fact for which an evidentiary hearing was required. Her certification that "I have never been served documents of foreclosure or judgments against me" and "never knew about the judgments and all of the prior proceedings until I retained my attorney" in Spring 2011 does not deny that she received the summons and complaint served by mail in July 2012. In any event, service by mail was properly effected under Rule 4:4-3(a).

Defendant argues that plaintiff's service by mail offends constitutional due process requirements. "[T]he only constitutional requirements of service of process" is "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.'" O'Connor v. Altus, 67 N.J. 106, 126 (1975) (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865, 873 (1950)). Here, due process was satisfied because plaintiff made a diligent inquiry confirming defendant's address, and then effected service to that address by regular mail and certified mail, return receipt requested. "[C]ertified mail, return receipt requested, is a mode of service meeting due process requirements." Shannon v. Acad. Lines, Inc., 346 N.J. Super. 191, 197 (App. Div. 2001). Indeed, where other service is not possible, "due process is satisfied when a defendant, who cannot be found for personal service but is a resident of the State at the time of the actionable event, is served by ordinary mail at his or her last known address." First Resolution Inv. Corp. v. Seker, 171 N.J. 502, 514 (2002) (citing Feuchtbaum v. Constantini, 59 N.J. 167, 181 (1971)).

Service by mail was authorized by our Court Rules and did not offend due process. Therefore, the judgment was not void under Rule 4:50-1(d).

IV.

Defendant alternatively argues she showed excusable neglect under Rule 4:50-1(a) for failing to challenge plaintiff's complaint. "[A] defendant seeking to reopen a default judgment [because of excusable neglect] must show that the neglect to answer is excusable under the circumstances and that [s]he has a meritorious defense." Mancini, supra, 132 N.J. at 335 (alterations in original) (citation omitted); see Intek Auto Leasing, Inc. v. Zetes Microtech Corp., 268 N.J. Super. 426, 430-31 (App. Div. 1993).

Defendant argues that, although she received and responded to plaintiff's first motion for default judgment, she was not given proper notice of plaintiff's "second and third motions" for final judgment. The record only contains two motions filed by plaintiff, both of which were served by mail on defendant at the encumbered property as authorized by Rule 1:5-2. There is "a presumption that mail properly addressed, stamped, and posted was received by the party to whom it was addressed." SSI Med. Servs. v. HHS, Div. of Med. Assistance & Health Servs., 146 N.J. 614, 621 (1996). Plaintiff submitted certifications that it

satisfied those requirements. Because defendant was properly put on notice of the motions for final judgment, she cannot show excusable neglect.

In addition, defendant has not shown a meritorious defense. "[T]he only issues in a foreclosure action are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Sun NLF Ltd. P'ship v. Sasso, 313 N.J. Super. 546, 550 (App. Div.), certif. denied, 156 N.J. 424 (1998). Defendant does not deny that she entered into the mortgage agreement, nor does she challenge the amount of indebtedness, or that her failure to make the monthly payments on the mortgage gave plaintiff the contractual right to foreclose.

Rather, defendant argues plaintiff had unclean hands. "Foreclosure is an equitable remedy governed by the operation of traditional equitable principles and is subject to the defense of unclean hands." N.J. Bank v. Azco Realty Co., 148 N.J. Super. 159, 166 (App. Div.), certif. denied, 74 N.J. 280 (1977). The essence of the doctrine of unclean hands, "'which is discretionary on the part of the court, is that a suitor in equity must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings.'" Marino v. Marino, 200 N.J. 315, 345 (2009) (citations omitted).

A-2649-13T4

Defendant argues that plaintiff initiated the foreclosure action with unclean hands when it engaged in the practice of "dual tracking." Dual tracking is the practice of a mortgagor initiating foreclosure proceedings while also negotiating a mortgage modification. Guillaume, supra, 209 N.J. at 468-69. Our Supreme Court has held that practice is lawful in New Jersey. Ibid.

In Guillaume, borrowers failed to appear in a foreclosure action and a default judgment was subsequently entered. Id. at 460-61. The defendants attempted to vacate the final judgment of foreclosure by arguing, among other things, that they were confused because they were negotiating a "potential loan modification at a time when the foreclosure action was underway." Id. at 468. Our Supreme Court held that "[t]here [was] no evidence that US Bank suggested to the Guillaumes that it was unnecessary to respond to the foreclosure action; [and] it expressly advised the Guillaumes that the foreclosure action could not be ignored." Id. at 468-69.

Here, nothing in the record, including defendant's certification, suggests that plaintiff misled defendant into believing she did not have to respond to the foreclosure action. Engaging in negotiations with defendant regarding a modification to her mortgage did not preclude plaintiff from seeking

20                                           A-2649-13T4

foreclosure for defendant's failure to pay back the loan. "Every [loan modification] application does not guarantee acceptance." Nat'l Cmty. Bank of N.J. v. G.L.T. Indus., Inc., 276 N.J. Super. 1, 4 (App. Div. 1994).

Defendant also argues that plaintiff engaged in predatory lending by extending a mortgage she could not afford, and tricking her into accepting an adjustable rate mortgage. However, she does not provide evidence nor published New Jersey cases to support her argument. Thus, "[w]e will not consider" defendant's entirely unsupported and "conclusionary statement." Miller v. Reis, 189 N.J. Super. 437, 441 (App. Div. 1983). In any event, we note defendant signed documents which made clear she was agreeing to an adjustable rate mortgage.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2649-13T4