**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0071-22

GRAND ESSEX LLC and GREAT
BERGEN HOMES, LLC, d/b/a
GREAT BERGEN HOMES,

     Plaintiffs-Respondents,

v.

RONALD MORRISON,

     Defendant-Appellant.

_____

          Submitted January 22, 2024 – Decided May 17, 2024

          Before Judges Gilson and Berdote Byrne.

          On appeal from the Superior Court of New Jersey,
          Law Division, Essex County, Docket No.
          DC-008963-21.

          Eldridge Hawkins, LLC, and Cecile D. Portilla, LLC,
          attorneys for appellant (Cecile Delrose Portilla and
          Eldridge T. Hawkins, on the briefs).

          Ofeck & Heinze, LLP, attorneys for respondents
          (Patrick J. Jordan, on the brief).

PER CURIAM

Defendant Ronald Morrison appeals from the Law Division's Special Civil Part order denying his motions for reconsideration and recusal of the trial judge. After reviewing the record in light of the arguments advanced by defendant and applying prevailing legal standards, we affirm the trial court's denial of reconsideration and denial to recuse.

I.

On August 25, 2019, defendant entered a lease for an apartment located in Irvington, New Jersey (the property) with Grand Essex LLC (Grand Essex) and Great Bergen Homes LLC (Great Bergen Homes). The lease was to commence September 15, 2019, and end September 14, 2020, with rent determined at $1,385 per month. The lease defined "Landlord" as "Great Bergen Homes," which is prominently displayed on the top of the lease's initial page, and required rent be paid to "Great Bergen Homes." The lease is signed by Sasi Shalom (Shalom), plaintiffs' property manager, as "Landlord" and by defendant as "Tenant."

Defendant failed to timely pay rent on March 15, 2020. Four days later, Governor Philip Murphy signed Exec. Order No. 106 (Mar. 19, 2020), 52 N.J.R. 549(a) (April 6, 2020), which prevented property owners from evicting tenants during the COVID-19 pandemic. Plaintiffs filed suit to evict defendant, but the

2

landlord-tenant matter was held in abeyance due to the pandemic and the eviction moratorium. Plaintiffs then filed a complaint on June 10, 2021, in the Law Division, Special Civil Part to recover outstanding rent.

In a related action, defendant claimed he and Shalom entered into a separate oral agreement where defendant would receive rental credits for work performed at the property and plaintiffs' other nearby property. Defendant filed a lawsuit in the Law Division against plaintiffs and Shalom for acts related to defendant's tenancy, including a claim for unpaid work on plaintiffs' properties.

Plaintiffs' complaint alleged defendant had not paid rent and late fees accrued from March 2020 through May 2021, and it was owed $14,622.00 in outstanding rent and fees. The court mailed defendant a summons on June 15, 2021. The notice stated he would be in default on July 23, 2021, if he did not provide an answer. Defendant filed an answer on July 8, 2021, but did so in a related action with a different docket number. Plaintiffs brought this error to the court's attention, but default was nevertheless entered against defendant.

Defendant then moved to vacate default and file an answer, which was granted on September 10, 2021. A hearing was scheduled for April 19, 2022, with notice mailed to the address listed on defendant's answer on February 23, 2022. Defendant failed to appear. As a result, the court heard testimony from

Shalom and entered judgment in plaintiffs' favor. The judgment awarded plaintiffs $14,036.20, minus any funds plaintiffs had received from DCA. The parties do not dispute plaintiffs received at least $12,107.80 from Department of Community Affairs (DCA) for defendant's rent during the pendency of this case.

Approximately one month later, on June 10, 2022, defendant moved to vacate the default judgment and transfer the case from the Special Civil Part to the Law Division. Defendant also moved to consolidate the Law Division case with the instant case and the related landlord-tenant case. On June 19, 2022, the Sunday before oral argument on defendant's motions, defendant asked the court to take judicial notice of facts contained in numerous documents submitted in the related Law Division case pursuant to N.J.R.E. 201(a), (b)(4), (c), & (d). Defendant's motions were denied by the trial court.

Defendant's motion to vacate was premised on his assertion that he never received the hearing notice because plaintiffs were stealing his mail, and because he claimed both plaintiffs lacked standing to sue. On lack of notice, the trial court found defendant's unsupported and contested assertion that plaintiffs stole his mail was insufficient to rebut the presumption of mailing. As to standing, the court found that although defendant claimed this suit was being

A-0071-22

carried out by the wrong parties, he nevertheless sued the same entities in his Law Division case.  The court also found the discrepancy between the named parties in the complaint and the lease at issue -- i.e., the lack of the descriptor "LLC" -- was not a valid reason to vacate the judgment.  The court declined to consolidate the three related cases because judgment had been entered in the instant case.

Defendant then moved for reconsideration of his motion to vacate and for the trial judge's recusal.  Defendant claimed the trial judge should not be able to hear his own recusal motion.  The trial court denied defendant's motions, finding defendant failed to carry his burden upon reconsideration.  There was no reason to vacate the default judgment as there was no excusable neglect or meritorious defense.  It also denied the motion for recusal.  This appeal followed.

## II.

On appeal, defendant makes multiple procedural, evidentiary, constitutional, and due process arguments in favor of reversal including:  1) the trial court improperly asked him to supply an alternative address; 2) his motion to vacate should have been granted because DCA had paid the money due for outstanding rent; 3) plaintiffs did not have standing; 4) the trial judge's communication with another trial judge's chambers violated judicial canons and

A-0071-22

required the judge's recusal; 5) defendant was denied his right to due process pursuant to <u>Morrissey v. Brewer</u>, 408 US 471 (1972), which required a hearing by an independent hearing officer on motions to vacate and reconsider; and 6) various arguments regarding the trial court's failure to take judicial notice of documents and reliance upon hearsay statements. He also claims <u>Rules</u> 1:12-1 and -2 are void for vagueness because they do not provide adequate notice to the public regarding the self-recusal of judges.

Many of these issues are not before us because they were not raised properly below or involve federal law not applicable to these proceedings. The matters before us concern only whether the trial court erred in denying reconsideration, and whether the trial judge erred in failing to recuse himself. <u>See</u> <u>Kopec v. Moers</u>, 470 N.J. Super. 133, 153 (App. Div. 2022) (quoting <u>Hayes v. Delamotte</u>, 231 N.J. 373, 387 (2018)). ("[A]ppeals are taken from orders and judgments and not from opinions, oral decisions, . . . or reasons given for the ultimate conclusion.")

We grant deference to the trial court's denial of a motion for reconsideration. <u>Castano v. Augustine</u>, 475 N.J. Super. 71, 78 (App. Div. 2023) (quoting <u>Hoover v. Wetzler</u>, 472 N.J. Super. 230, 235 (App. Div. 2022)). As such, we decline to reverse the trial court's decision unless it is a clear abuse of

6

discretion.  <u>Kornbleuth v. Westover</u>, 241 N.J. 289, 301 (2020) (quoting <u>Hous. Auth. of Morristown v. Little</u>, 135 N.J. 274, 283 (1994)).  Reconsideration of a final order "is appropriate only in those cases which fall into that narrow corridor in which either: 1) the court has expressed its decision based upon a palpably incorrect or irrational basis; or 2) it is obvious that the court either did not consider, or failed to appreciate the significance of probative, competent evidence . . . ."  <u>Castano</u>, 475 N.J. Super. at 78 (quoting <u>Triffin v. SHS Grp., LLC</u>, 466 N.J. Super. 460, 466 (App. Div. 2021)); <u>see</u> <u>R.</u> 4:49-2.

A.  <u>Reconsideration of Motion to Vacate Default Judgment</u>.

A party to an action in the Special Civil Part may move to vacate pursuant to <u>Rule</u> 4:50-1, <u>Olympic Indus. Park v. P.L., Inc.</u>, 208 N.J. Super. 577, 582 (App. Div. 1986) (Pressler, J.), or for reconsideration.  <u>R.</u> 6:6-1.  Pursuant to <u>Rule</u> 4:50-1(a), a default judgment will remain undisturbed unless the defendant shows the failure to appear or otherwise defend was due to excusable neglect under the circumstances and the existence of a meritorious defense to both the cause of action and damages.  <u>U.S. Bank Nat'l Ass'n v. Guillaume</u>, 209 N.J. 449, 468-69 (2012).  Excusable neglect has been defined as "something the parties could not have protected themselves from during the litigation."  <u>Romero v. Gold Star Distrib., LLC</u>, 468 N.J. Super. 274, 298 (App. Div. 2021) (emphasis

omitted).  Absent an abuse of discretion, trial court decisions will not be disturbed by a reviewing court.  Id. at 293.

Rule 4:50-1 grants courts the power to relieve a party from a final judgment under six conditions: "a) mistake, inadvertence, surprise, or inexcusable neglect; b) newly discovered evidence; c) fraud, misrepresentation, or other misconduct; d) when the judgment is void; e) when the judgment is satisfied, released, or discharged; and f) any other reason justifying relief."

Defendant asserts the trial court abused its discretion in denying his motion for reconsideration by failing to vacate the default judgment.  He contends he established excusable neglect pursuant to Rule 4:50-1(a) because the trial court required defendant provide the court an alternative mailing address; fraud pursuant to Rule 4:50-1(c) because there was no outstanding rent at the time judgment was entered; and exceptional circumstances pursuant to R. 4:50-1(f) because he proved he diligently participated in this and the related litigation.

Defendant's Rule 4:50-1(a) arguments ignore the presumption of mailing rule and focus entirely upon minutiae in the trial court's oral decision.  The trial court's denial of defendant's motion for reconsideration was neither palpably incorrect nor irrational.  The court merely stated defendant provided the court

8

with only his apartment address for official notice purposes. This comment was prompted because defendant stated he had his mail forwarded by the U.S. Postal Service (USPS) from his apartment address to his P.O. box. The court did not order him to provide his P.O. box address and even agreed with defendant at oral argument that he was not required to inform the court about his decision to forward his mail.

Nor did the trial court fail to consider competent, probative evidence. It correctly found defendant's claim that plaintiffs were stealing his mail irrelevant, given the USPS was automatically forwarding his mail for several months before the court sent notice of the hearing. Because the trial notice was never physically delivered to his apartment but instead automatically forwarded to the P.O. box by the USPS, plaintiffs could not have stolen it. Defendant's only argument against the presumption of mailing rule is its application "was an unfair resolution of doubt in [plaintiffs'] favor."

Mail that is properly addressed, stamped, and posted is presumed to be received by the party addressed. U.S. Bank Nat'l Ass'n v. Curcio, 444 N.J. Super. 94, 112 (App. Div. 2016) (quoting SSI Med. Servs., Inc. v. Dep't of Human Servs., 146 N.J. 614, 621 (1996)). The presumption may be rebutted through evidence that indicates notice was never received. SSI Med., 146 N.J.

at 625 (quoting <u>Szczesny v. Vasquez</u>, 71 N.J. Super. 347, 354 (App. Div. 1962)). Although the court must treat motions to vacate default judgments with great liberality, any indulgence must be grounded in reason. <u>MTAG v. Tao Invs., LLC</u>, 476 N.J. Super. 324, 333 (App. Div. 2023) (quoting <u>Mancini v. EDS ex rel. Auto. Full Ins. Underwriting Ass'n</u>, 132 N.J. 330, 334 (1993)). The denial of receipt, without more, is insufficient to rebut the presumption of mailing. <u>See City of East Orange v. Livingston Township</u>, 27 N.J. Tax 161, 170 (Tax 2013) (finding the presumption rebutted when "[e]ight assessment notices were sent to a non-existent zip code" and another 32 notices lacked a street address). A party unable to defeat the presumption, and thus properly noticed, cannot establish excusable neglect pursuant to <u>Rule</u> 4:50-1(a). <u>Curcio</u>, 444 N.J. Super. at 112.

According to defendant, "but for the fraudulent theft of [his] mail, he would not have been forced to request mail forwarding." Here, the fact remains defendant began forwarding his mail prior to the notice being sent, and hence plaintiffs had no opportunity to steal it.

B. <u>Reconsideration of Denial of Recusal Motion.</u>

Whether a judge should disqualify himself or herself is a matter within the sound discretion of the judge. <u>State v. Buckner</u>, 437 N.J. Super. 8, 36 (App. Div. 2014) (quoting <u>Chandok v. Chandok</u>, 406 N.J. Super. 595, 603 (App. Div.

10

2009)), aff'd on other grounds, 223 N.J. 1 (2015); Panitch v. Panitch, 339 N.J. Super. 63, 66 (App. Div. 2001). We review for abuse of discretion. Ibid.

"Any party, on motion made to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." R. 1:12-2. "[B]ias is not established by the fact that a litigant is disappointed in a court's ruling on an issue." State v. Marshall, 148 N.J. 89, 279 (1984). "[T]he belief that the proceedings were unfair must be objectively reasonable." Id. at 279.

Defendant claims the trial judge's recusal was necessary because he called another judge's chambers on the date of the hearing after noting defendant failed to appear, which informed him they had sent a zoom link to defendant's email for the hearing that resulted in the default. He claims this was a prohibited ex parte communication that required the judge's recusal. That claim is without legal merit and is an insufficient basis to require recusal. Moreover, defendant failed to set forth any relevant case law that would require recusal pursuant to these facts.

Concerning the DCA payment, it appears defendant failed to raise this issue before the trial court in either the underlying motion to vacate or for reconsideration. Although generally we decline to consider an issue not presented to the trial court, because the trial court's order stated a sum certain

11

minus any credits received from DCA, we review defendant's claim substantively. See Berardo v. City of Jersey City, 476 N.J. Super. 341, 354 (App. Div. 2023) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

Factually, defendant's argument relies upon a miscalculation. As detailed during the proof hearing, defendant owed $16,987 at the end of August 2021. The court took notice of a $12,107.80 payment from DCA to plaintiffs in August 2021, which was confirmed by Shalom at the April 19, 2022 hearing. This left $4,879.20 in outstanding payments. Shalom testified plaintiffs received no further payments and thus plaintiffs were owed rent for December 2021, as well as January, February, March, and April 2022, for an additional $6,925. Those amounts, when added to the $400 in late fees assessed, totaled $12,204.20. The trial court added $1,750 in attorney's fees and $82 in costs for a total judgment amount of $14,036.20. Contrary to defendant's assertions, the amount of the judgment was correct, despite plaintiffs having received over $12,000 from DCA.

Rule 4:50-1(f) applies when a defendant can prove exceptional circumstances. DEG, LLC v. Township of Fairfield, 198 N.J. 242, 269-70 (2009); Guillaume, 209 N.J. at 468, 494. However, the broad language of

12

subsection (f) "does not present the court with a standardless residual discretionary power to set aside judgments." Little, 135 N.J. at 285 (quoting Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977)). Defendant relies entirely upon the same reasons for vacatur pursuant to Rule 4:50-1(a) as he does for subsection (f). None of those circumstances rise to the level of excusable neglect, let alone exceptional circumstances.

Nor does defendant raise any meritorious defense. Defendant claims plaintiffs lacked standing to sue him for the outstanding rent and asserts the trial court erred by refusing to acknowledge his defenses and counterclaims.

Standing is a threshold determination, Petro v. Platkin, 472 N.J. Super. 536, 558 (App. Div. 2022) (quoting N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 291 (App. Div. 2018)), subject to plenary review on appeal. Ibid. No deference is afforded to the trial court's conclusions. Cherokee LCP Land, LLC v. City of Linden Planning Bd., 234 N.J. 403, 414 (2018).

Defendant contends his lease was with Shalom in his individual capacity. Although the lease displays "Great Bergen Homes" prominently on the first page, defendant asserts this lacks any legal significance. He claims the contract was not signed by any of its authorized agents because Shalom did not identify himself as such.

Generally, standing in contract cases exists only for parties to the contract. Med. Soc'y of N.J. v. AmeriHealth HMO, Inc., 376 N.J. Super. 48, 61 (App. Div. 2005).

Plaintiffs have standing pursuant to the lease. The lease was executed between "TENANT," defined as defendant, and "LANDLORD," defined as "Great Bergen Homes." Rent was to be paid to Great Bergen Homes at its listed P.O. box. The lease makes repeated reference to the duties and obligations of both landlord and tenant. Shalom, in his individual capacity, does not appear on the lease. We enforce contracts as written when the parties' intent is clear and the language unambiguous, save only when enforcement would produce an absurd result. Quinn v. Quinn, 225 N.J. 34, 45 (2016).

In addition to the lease's plain language, the record amply demonstrates defendant did not believe he executed a lease with Shalom in his individual capacity. Defendant filed a citizen's report against Shalom "with Grand Essex LLC . . . ." In his first motion to vacate the default judgment and to file an answer, defendant referred to Shalom as owner/operator/agent "for plaintiff Great Bergen Homes LLC . . . ." His verified answer also states, "Plaintiff and owner/operator/agent [Shalom]," and his amended complaint in his Law Division case claims Shalom is the principal/owner of Grand Essex and acts

14

"through [his] agent" Great Bergen Homes, "or [he is] the managing agent[] for said entities . . . ." Given defendant's course of conduct, there is ample evidence in the record to find defendant knew he entered a contract with Great Bergen Homes through Shalom as its agent. The trial court correctly rejected defendant's standing argument.

Here, the record does not reflect a valid reason to disturb the trial court's orders and we affirm both orders. To the extent we have not addressed any remaining arguments raised by defendant, we find they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-0071-22